IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Wayne Newman, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:24-cv-00887-BHH |
| v. ) | |
| ) | **Opinion and Order** |
| Ambry Genetics Corporation, Joe ) | |
| Bedell, and Jack Shandley, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

On September 1, 2023, Plaintiff Wayne Newman ("Plaintiff") filed a complaint in state court against his former employer, Ambry Genetics Corporation ("Ambry"), Ambry's parent company, Konica Minolta Healthcare Americans Inc. ("Konica"), Joe Bedell ("Bedell"), and Jack Shandley ("Shandley"). On September 18, 2023, Plaintiff filed a first amended complaint in state court dismissing Konica from the action. (ECF No. 25 at Ex. B.) The parties then filed a consent motion to strike and file a correct amended complaint due to clerical errors. (ECF No. 25 at 2.) The state court granted the consent motion, and Plaintiff filed a *corrected* first amended complaint on January 19, 2024. (ECF No. 1-1).

On February 21, 2024, Defendants Ambry, Bedell, and Shandley (collectively, "Defendants") removed the case to this Court. (ECF No. 1.) The first amended complaint asserts six causes of action against Defendants: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.*; (2) defamation (implied malice); (3) defamation (actual malice, common law malice); (4) negligent supervision; (5) tortious interference with contract; and (6) civil conspiracy. (ECF No. 1-1 at 15-21.)

On February 28, 2024, Defendants moved to compel arbitration. (ECF No. 7.) The parties submitted briefs in support of and against arbitration, and the Magistrate Judge also granted Plaintiff's motion for leave to file a sur-reply in opposition to Defendants' motion to compel. (ECF No. 7-12.) On April 26, 2024, Magistrate Judge Mary Gordon Baker filed her Report and Recommendation ("Report"), recommending that this Court grant Defendants' motion to compel arbitration and dismiss the action without prejudice. (ECF No. 13.)

Plaintiff filed timely objections to the Report, (ECF No. 14), Defendants filed a reply to Plaintiff's objections, (ECF No. 15), and Plaintiff filed a response in support of his objections. (ECF No. 17.) This Court thoroughly examined the entire record before it and, on August 14, 2024, it issued an Opinion and Order granting Defendants' motion to compel and staying the case. (ECF No. 21.)

Plaintiff now moves for reconsideration pursuant to Rule 54(b), Fed. R. Civ. P. (ECF No. 24.) Plaintiff asserts one ground in support of reconsideration – that "[r]econsideration is warranted in light of the Second Circuit's recent holding in *Olivieri v. Stifel, Nicolaus & Co., Inc*., 112 F.4th 74, 78 (2d Cir. 2024). Plaintiff also seeks leave to amend his first amended complaint, to add new allegations that Plaintiff, himself, reported alleged sexual harassment of others by Bedell to managers and area directors, among other allegations. (*Id*.) Defendants filed a response in opposition, (ECF No. 25), and Plaintiff filed a reply. (ECF No. 26.) This matter is now ripe.

**Motion for Reconsideration**

A motion for reconsideration of an interlocutory order under Rule 54(b) is "not subject to the strict standards applicable to motions for reconsideration of a final

2

judgment," because "a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). "Although Rule 54(b) does not specify grounds for seeking reconsideration, the Fourth Circuit has recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Howard v. W. Virginia Div. of Corr.*, No. 2:13-CV-11006, 2016 WL 1173152, at *5 (S.D.W. Va. Mar. 22, 2016) (Johnston, J.). Motions for reconsideration generally "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." 11 Wright, et al., Federal Practice & Procedure § 2810.1 (3d. ed.) (discussing Rule 59(e)); *Ruffin v. Entm't of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 1435674, at *5 (N.D.W. Va. Apr. 25, 2012) (applying rule to Rule 54(b) motions); *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) (same).

As noted, Plaintiff's sole argument in support of reconsideration is that reconsideration is warranted in light of the Second Circuit's recent holding in holding in *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 78 (2d Cir. 2024). (ECF No. 24 at 1, 7-11.) As an initial matter, the Court notes that *Olivieri* is not binding on this Court. But, even if it were, after review, the Court finds that *Olivieri* is similar to cases that both the Magistrate Judge and the undersigned have already assessed and distinguished from the instant matter. (*See, e.g.,* ECF No. 13 at 10, ECF No. 21 at 4-6.)

Similar to previously addressed cases and unlike the instant matter, the plaintiff in *Olivieri* alleged that she was sexually assaulted and harassed and that her employer

3

retaliated against her after she complained about being subjected to a hostile work environment. 112 F.4th at 77-82. The issue on appeal was one of accrual – whether plaintiff's retaliation-based hostile work environment claims accrued "on or after" the effective date (March 3, 2022) of the Ending Forced Arbitration Act ("EFAA"). *Id.* at 85. In finding that the EFAA applied to plaintiff's retaliation-based hostile work environment claims, the Second Circuit held that plaintiff's hostile work environment claims were subject to the continuing violation doctrine; that plaintiff had alleged defendants engaged in acts after the EFAA's effective date "that [were] part of the same course of conduct" underlying her hostile work environment claims; and that Congress did not tie "the effective date of the EFAA to when a claim *first* accrues." *Id.* at 85-90 (emphasis in original).

In support of reconsideration, Plaintiff asserts that the Second Circuit in *Olivieri* explained "that a retaliation claim **standing alone** would be covered by the EFAA." (ECF No. 26 at 3 (emphasis in original). *See also id.* at 4 (arguing that "*Olivieri* clarifies that a retaliation claim unaccompanied by a sexual harassment claim can be a sexual harassment dispute under the EFAA").) The Court disagrees. Rather, the Second Circuit held that if plaintiff has alleged, after the EFAA was in effect, that defendants engaged in acts "that are part of the same course of conduct underlying her hostile work environment claims," then her "retaliation-based hostile work environment claims" have accrued after the EFAA's effective date. 112 F.4th at 91-92. And, in rejecting defendants' argument that plaintiff's retaliation claims fall outside the EFAA's definition of "sexual harassment dispute," the Second Circuit noted that it has recognized retaliation for reporting discrimination or harassment to be related to conduct that is alleged to constitute the

4

underlying discrimination or sexual harassment. *Id.* at 92. Thus, the Second Circuit was not evaluating a retaliation claim unaccompanied by a sexual harassment claim, nor did it hold – or come anywhere close to holding – that the EFAA applies in the absence of facts supporting a plausible sexual harassment claim. Rather, in stark contrast to instant case, there was no dispute that the plaintiff in *Olivieri* had pled a plausible sexual harassment claim. As such, the Court declines to reconsider its prior Order and Opinion based on an argument that has been previously briefed between the parties, fully considered, and rejected by both judges assigned to this matter.

Accordingly, because the Court finds that Plaintiff has failed to identify "an intervening change in controlling law" or establish any other grounds supporting reconsideration, it denies Plaintiff's motion for reconsideration.

## Motion for Leave to Amend

Plaintiff moves for leave to amend his first amended complaint on the ground that amending serves the interests of justice. (ECF No. 24 at 11-15. *See also* ECF No. 24-1 (proposed second amended complaint).) Plaintiff states that this is the first time he has sought leave to amend to add additional factual allegations; that he should be afforded the opportunity to amend to address the issues this Court raised in its Order and Opinion; and that he should be allowed to amend even though he moved to amend after this Court issued its Order and Opinion. (ECF No. 24 at 11-13.)

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading with the court's leave, which should be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2)." That said, a court may deny leave to amend where there are grounds such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[A] district court may not deny . . . a motion [to amend] simply because it has entered judgment against the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc). "The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to [Rule] 15(a). In other words[,] a court should evaluate a postjudgment motion to amend the complaint 'under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility.'" *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 470–71 (4th Cir. 2011) (quoting *Laber*, 438 F.3d at 427). Here, Defendants contend that Plaintiff's motion to amend should be denied on the basis of undue delay, bad faith, and futility. (ECF No. 25 at 7-14.)

*Undue Delay*

Plaintiff's second amended complaint is undoubtedly delayed. "[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent." *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987.) Courts have found undue delay when "a party has filed a motion for leave to amend long after it should have become aware of the information that underlies the motion." *IXYS Corp. v. Advanced Power Tech., Inc.*, No. 02-3942, 2004 WL 135861, at *4 (N.D. Cal. Jan. 22, 2004) (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)). What constitutes "long after" lies in the discretion of the Court and depends, in part, on the moving party's ability to provide a reasonable explanation for the delay.

6

Plaintiff contends that he promptly filed his motion for leave to amend following this Court's articulation of its reasoning for compelling arbitration. (ECF No. 24 at 11-12.) He contends that the proposed second amended complaint cures the issues the Court raised in support of compelling arbitration – namely, that Plaintiff did not sufficiently assert a sexual harassment claim nor allege that he complained about Bedell's conduct toward other women. (*Id.* at 12-13.) However, Plaintiff provides no satisfactory explanation as to why he did not plead this new factual information at an earlier stage. This is not a case where the original complaint was a bare-bones complaint; indeed, the original complaint and first amended complaint contained over seventy paragraphs of factual allegations in support of Plaintiff's claims. Moreover, the factual allegations Plaintiff now seeks to add are not newly discovered but have been known to Plaintiff since the filing of his initial complaint over one year ago.

Furthermore, even assuming *arguendo* that Plaintiff's explanation for the delay is that he did not believe he was **required** to allege that he personally complained about Defendant Bedell's conduct to be covered by the EFAA, the Court finds that, even under the most generous interpretation of the record, Plaintiff should have filed his motion to amend shortly after April 26, 2024, when the Magistrate Judge issued her Report. (*See* ECF No. 13 at 10 (finding that "[t]he conclusion that the EFAA does not encompass claims brought by a plaintiff who did not personally experience or report sexual assault or harassment is further supported by the stated purpose of the statute"; concluding that "[w]here, as here, a plaintiff brings claims that are based on a witness statement he provided—rather than a grievance he personally filed or sexual assault or harassment he personally experienced—that plaintiff is not a "sexual harassment claimant" and the

7

EFAA's purpose is not served by allowing his case to be excused from arbitration and litigated in court").) Yet, rather than moving to amend at that point, Plaintiff filed detailed objections and a detailed response in support of his objections, both further emphasizing his legal theory that **witnesses** of sexual harassment who **corroborate** and support a sexual harassment claim filed **by someone else** should be afforded protection under the EFAA. (*See* ECF No. 14 at 11-12; No. 17 at 9-12.)

At no point during the more than three months between the filing of the Report and this Court's Order and Opinion did Plaintiff move for leave to amend. Instead, Plaintiff allowed the Court to undertake the work of reaching a decision on Defendants' motion to compel. Plaintiff has not provided a reason for this three-month delay. *See Naden v. Saga Software, Inc.*, 11 F. App'x 381, 383 (4th Cir. 2001) ("[U]ndue delay can be inferred from the absence of explanation for the delay." (citing *Nat'l Bank of Wash. v. Pearson*, 863 F.2d 322, 328 (4th Cir. 1988))); *Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 261 (D. Md. 2022) (finding a motion to amend filed three months after the necessity for altering became apparent was unduly delayed), *aff'd*, 97 F.4th 166 (4th Cir. 2024); *Umanzor-Lazo v. U.S. I.N.S.*, 178 F.3d 1286, 1999 WL 274075, at *3 (Table) (4th Cir. 1999) (finding that motion to amend filed two months after "the event triggering the motion to amend, [was] unduly delayed"). In sum, the Court finds that Plaintiff was put on notice of the deficiencies in the first amended complaint by, at least, the filing of the Report. If he had something relevant to add, he should have moved to add it then. This unexplained delay can only be described as undue.

Of course, "delay alone is an insufficient reason to deny [a] plaintiff's motion to amend." *Laber*, 438 F.3d at 427. Rather, delay has generally been considered a factor in

determining whether a proposed amendment would be prejudicial or is sought in bad faith. *Id.* at 427 ("Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing."); Wright & Miller § 1487 ("When the court inquires into the good faith of the moving party, it typically will take account of the movant's delay in seeking the amendment."). Thus, the conclusion that Plaintiff's motion is unduly delayed informs, but is not dispositive of, the Court's analysis of the grounds for denying leave to amend.

*Bad Faith*

Defendants contend that Plaintiff seeks to amend his complaint in bad faith. (ECF No. 25 at 7-12.) Bad faith generally involves changing legal theories and the belated presentation of facts which the pleader was already aware of in an effort to delay ultimate resolution. *See Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1015 (8th Cir. 2015); Wright & Miller § 1488 ("By failing to introduce the matter contained in the proposed amendment at as early a stage in the litigation as possible, the pleader has demonstrated bad faith in not apprising the opponent of its true position in the action."). Bad faith is established "when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [and] to present theories seriatim in an effort to avoid dismissal[.]" *Minter v. Prime Equip.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (internal citations and quotation marks omitted).

After the Court ordered the parties to arbitrate and stayed the case, Plaintiff filed a motion to amend. Upon review, it is evident that the new factual allegations in Plaintiff's proposed second amended complaint change his legal theory. For the first time, Plaintiff

9

alleges that *he* complained to managers about Bedell allegedly sexually harassing female employees. (*See, e.g.,* ECF No. 24-1 at ¶ 60, 77.) This allegation is at odds with the prior record in this case. Indeed, the first amended complaint alleges that Plaintiff was a corroborating witness in a sexual harassment investigation arising out of a female employee's complaint to human resources that she was sexually harassed by Bedell. (ECF No. 1-1.) Based on this allegation, Defendants raised doubts as to the applicability of the EFAA to Plaintiff's retaliation claim in its reply briefing in support of its motion to compel. Certainly, if this new factual allegation – of which Plaintiff was certainly aware at the outset of the case – was simply a good-faith effort to clarify his claims, Plaintiff would have sought leave to amend shortly after Defendant filed its reply brief in support of compelling arbitration. Yet, Plaintiff sought leave to file a sur-reply, wherein he argued that the EFAA extends to *witnesses* in sexual harassment disputes. At a minimum, as discussed above, Plaintiff should have sought leave to amend shortly after the Magistrate Judge filed her Report, *rejecting* Plaintiff's claim that he is protected under the EFAA based on being a corroborating witness and *explicitly* noting that Plaintiff did not personally report sexual harassment. Plaintiff alternatively continued to press his luck by filing detailed objections and a response in support of his objections, wherein he continued to advance his theory that he should be afforded protection under the EFAA because he was retaliated against for providing a witness statement corroborating another's person's report of a single incident of alleged sexual harassment.

In *Logar v. W. Va. Univ. Bd. Of Governors*, plaintiffs moved to amend their complaint after entry of judgment against them. No. 1:10cv201, 2012 WL 243692, at *1 (N.D. W. Va. Jan. 25, 2012), *aff'd*, 493 F. App'x 460 (4th Cir. 2012). The court noted that,

although the Fourth Circuit rule treating delay alone as an insufficient reason to deny leave to amend applies even in post-judgment situations, "the post-judgment climate is a major factor in the consideration of the other factors relevant to the inquiry, most especially those of bad faith and prejudice to the opposing party. *Id*. at *4 (citing *Laber*, 438 F.3d at 427, and *Adams v. Gould*, 739 F.2d 858, 864 (3d Cir.1984)). The court further pointed out that

> unexcused delay in filing a motion for leave to amend [is] a sufficient basis for ***post-judgment*** denial of such a motion because, "much of the value of summary judgment procedure . . . would be dissipated" if a movant were allowed to rely on one theory until the district court finds that theory "unsound," then to return with another theory after unfavorable judgment is entered.

*Id.* at *5 (emphasis added) (quoting *Vielma v. Eureka Co.*, 218 F.3d 458, 469 (5th Cir. 2000)). The court cited "undue, unexcused delay, as well as prejudice to the opposing parties" in finding that the interests of justice "weigh[ ] in favor of the finality of the judgment" and denial of leave to amend. *Id.* at *10. Notably, like the instant case, plaintiff's case had not progressed into discovery, nor had a period of many years elapsed between the filing of the complaint and plaintiffs' request to amend. *Id.* at *8. After noting that arbitrary restrictions cannot be placed upon when a motion to amend can be deemed untimely, the court emphasized that plaintiffs were aware of the claims they sought to add two months before the court entered judgment and three months prior to the time they filed their motion to amend. *Id.* Further, the court noted that "for months beforehand, [plaintiffs] were also aware of the possibility that this Court would find that their original complaint" is subject to dismissal, yet "they chose to stand behind their original complaint, and only when that complaint was dismissed, did they elect to move to amend." *Id.*

11

Taking the facts in *Logar* one step further, here, Plaintiff is attempting to change the legal theory on which his retaliation claim is based by asserting new factual allegations that were known to him when he filed his initial complaint in September 2023, in an attempt to escape arbitration. Thus, unlike the plaintiff in *Laber v. Harvey*, who sought and was granted leave to amend after his complaint failed because the Fourth Circuit, *en banc*, chose to overturn a line of previously binding precedent upon which he had based his complaint, here, we **do have** a "run-of-the-mill case where the plaintiff's first theory of recovery is based on *his own* reading of [] cases and it turns out that he misinterpreted how that theory would apply to the fact of his case." 438 F.3d at 428 (emphasis in original). Further, in contrast to the plaintiff in *Laber,* Plaintiff did not timely seek leave to amend, as discussed above. *See Hensley v. City of Charlotte*, No. 320CV00482KDBDSC, 2021 WL 4929491, at *5 (W.D.N.C. Oct. 21, 2021) (denying motion to amend based on unexcused delay/bad faith, among other grounds, and noting that "unlike the *pro se* plaintiff in *Laber*, this case appears to be wholly driven by experienced counsel who plainly made a strategic choice to try to prevail on Plaintiff's original claims before changing course after the Court's ruling. Such conduct is the antithesis of the 'interests of justice' that underlie the ability of a party to amend a pleading").

Rule 15(a) is designed to allow parties the opportunity to amend pleadings "to assert matters which were overlooked or were unknown at the time the party interposed the original complaint." Wright, et al. § 1472. "Bad faith will result when a party has delayed in seeking an amendment after the basis for the amendment becomes known." *Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 WL 4202470, at *2 (E.D. Va. Aug. 22, 2014). *See also Pine Mountain Oil & Gas, Inc. v. Equitable Prod. Co.*, 446 F.

Supp. 2d 643, 650 (W.D. Va. 2006) (noting that plaintiff's new theory was available to it from the outset of the case and finding plaintiff's motion to amend "impermissibly accompanied by bad faith" because it "could have asserted the proposed amendments earlier in the case, rendering a more efficient expenditure of judicial resources"). Accordingly, after close review, given the facts and posture[1] of this case, the Court finds that because of undue, unexcused delay, as well as bad faith, Plaintiff's motion for leave to file a proposed second amended complaint should be, and is denied.[2]

For the foregoing reasons, the Court **denies** Plaintiff's motion for reconsideration and for leave to amend his complaint. (ECF No. 24.) Accordingly, this case remains stayed pending completion of arbitration.

**IT IS SO ORDERED.**

/s/ *Bruce Howe Hendricks*
United States District Judge

October 23, 2024
Charleston, South Carolina

---

[1] To be clear, Plaintiff's motion was not filed post-judgment. However, as examined in this Order, the procedural posture of this case is akin to a post-judgment climate.

[2] Because this is a dispositive ground for denying leave to amend, the Court does not address Defendants' alternative argument that futility should preclude amendment.